1

2

3

4

5

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

6

7

8

9

10

11

12

SHAWN WAYNE HICKS,           )
                             )   No. CV-11-063-CI
         Plaintiff,          )
                             )   ORDER GRANTING PLAINTIFF'S
v.                           )   MOTION FOR SUMMARY JUDGMENT
                             )   AND DENYING DEFENDANT'S
MICHAEL J. ASTRUE, Commissioner )   MOTION FOR REMAND FOR
of Social Security,          )   ADDITIONAL
                             )
         Defendant.          )
                             )

13

14

15

16

17

18

19

20

21

22

BEFORE THE COURT are Plaintiff's Motion for Summary Judgment and Defendant's Motion for Remand. (ECF No. 18, 29.)  Attorney Kenneth L. Isserlis represents Shawn Hicks (Plaintiff); Special Assistant United States Attorney Michael S. Howard represents the Commissioner of Social Security (Defendant).   The parties have consented to proceed before a magistrate judge. (ECF No. 7.) After reviewing the administrative record and briefs filed by the parties, the court **GRANTS** Plaintiff's Motion for Summary Judgment, **DENIES** Defendant's Motion for Remand for additional proceedings and remands the matter to the Commissioner for an immediate award of benefits.

23

**JURISDICTION**

24

25

26

27

Plaintiff applied for disability insurance benefits (DIB) and Supplemental Security Income (SSI) on July 12, 2006. (Tr. 202.)  He alleged disability due to chronic fatigue immune disorder, Lyme disease, and ehrlichlosis with an onset date of March 31, 2005.

28

(Tr. 196.)   After benefits were denied initially and on reconsideration, Plaintiff requested a hearing before an administrative law judge (ALJ).   A hearing before ALJ Gene Duncan was held on November 17, 2008.   (Tr. 39-107.)   Plaintiff, who was represented by counsel, medical expert David Rullman, M.D., and vocational expert Sharon Welter (VE) testified.   The ALJ denied benefits on July 21, 2009 and the Appeals Council denied review. (Tr. 1-5, 18-31.)   The instant matter is before this court pursuant to 42 U.S.C. § 405(g).

**STANDARD OF REVIEW**

In *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), the court set out the standard of review:

> A district court's order upholding the Commissioner's denial of benefits is reviewed *de novo*. *Harman v. Apfel*, 211 F.3d 1172, 1174 (9th Cir. 2000). The decision of the Commissioner may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id.* at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).
>
> The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed *de novo*, although deference is owed to a reasonable construction of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).

It is the role of the trier of fact, not this court, to resolve conflicts in evidence. *Richardson,* 402 U.S. at 400. If evidence

ORDER GRANTING PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT AND DENYING DEFENDANT'S
MOTION FOR REMAND FOR ADDITIONAL PROCEEDINGS - 2

supports more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988). If there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or non-disability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

## SEQUENTIAL EVALUATION

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971). This burden is met once a claimant establishes that a physical or mental impairment prevents him from engaging in his previous occupation. 20 C.F.R. §§ 404.1520(a), 416.920(a). At step five, the burden shifts to the Commissioner to show that (1) the claimant can perform other substantial gainful activity; and (2) a "significant number of jobs exist in the national economy" which claimant can perform. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Kail v. Heckler*, 722 F.2d 1496,

ORDER GRANTING PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT AND DENYING DEFENDANT'S
MOTION FOR REMAND FOR ADDITIONAL PROCEEDINGS - 3

1498 (9th Cir. 1984).

**STATEMENT OF THE CASE**

The facts of the case are set forth in detail in the transcript of proceedings and are briefly summarized here. Plaintiff was 32 years old at the time of the November 17, 2008, hearing. He had obtained a GED and attended three or four years of college, but did not obtain a college degree. (Tr. 45, 74.) He stated he is single and lives in a basement apartment he rents from an elderly woman. (Tr. 80.) His past work experience includes installing sprinklers and landscaping when he was in high school; working part time as a stage design artist and for the college transportation department while attending college; and teaching English as a volunteer in China. (Tr. 46-47.)

He testified his health problems began while he was teaching in China in 1997. He stated he suffered persistent fatigue, fever, dizziness, and cold sweats, but medical personnel were unable to identify the cause. Upon return to the United States, his symptoms worsened. He saw numerous physicians who could not identify a specific diagnosis. In or around May 2006, he was diagnosed with Lyme disease by a specialist in California and received treatment with antibiotics. (Tr. 51-53, 59.) In addition, treating physicians diagnosed chronic fatigue syndrome (CFS), a diagnosis that was confirmed by the testifying medical expert. (Tr. 70.)

Plaintiff underwent surgery in July 2008 for reconstruction of his right shoulder. (Tr. 576-78.) In December 2008, his treating surgeon recommended left shoulder repair and opined Plaintiff's left and right shoulder instability severely limited Plaintiff's ability

1  to perform work activities.  (Tr. 262, 632-33, 638.)

2      Plaintiff testified he has been unable to sustain work or work
3  for more than four hours for two or three days in a row since March
4  2004, due to symptoms of extreme fatigue, cognitive problems,
5  confusion, insomnia, joint pain, dizziness, and medication side
6  effects which include recurrent diarrhea.  (Tr. 50-55.)

7                          **ADMINISTRATIVE DECISION**

8      At step one, ALJ Duncan found Plaintiff had not engaged in
9  substantial gainful activity since March 31, 2005, the onset date as
10  originally alleged. (Tr. 23.)[1]  At step two, he found Plaintiff had
11  severe impairments: "right shoulder weakness, post surgery,
12  tendonitis." *Id*.  He found the impairments of Lyme disease, chronic
13  fatigue syndrome, fibromyalgia, and somatoform disorder were non-
14  severe or non-medically determinable physical and mental

15  _____

16      [1]  On July 31, 2008, Plaintiff amended his alleged onset date
17  to March 1, 2004, the date he was last employed. (Tr. 21, n.1; Tr.
18  188.)  Factors relevant to the determination of onset are a
19  claimant's work history, medical evidence establishing impairment,
20  a pattern of medical treatment, and claimant's allegations. *Lewis*
21  *v. Apfel, SSR* 83-20.  However, the ALJ did not consider these
22  factors. (Tr. 21-22, n.1.)  Rather, he retained March 31, 2005, as
23  the onset date "for purposes of this opinion," because his decision
24  was "unfavorable" and "amending the onset date would not be of
25  significance here." (*Id*.)  Considering the relevant factors, for
26  purposes of calculating benefits, the record supports an amended
27  onset date of March 1, 2004. (*See, e.g.*, Tr. 474.)

28

impairments.  (Tr. 24.)   At step three, the ALJ found Plaintiff's
impairments, alone and in combination, did not meet or medically
equal one of the listed impairments in 20 C.F.R., Appendix 1,
Subpart P, Regulations No. 4 (Listings).  (Tr. 26.)  At step four,
he determined Plaintiff was capable of light work but "cannot
perform overhead work with his right upper extremity, . . . should
not be exposed to work near moving machinery and should have direct,
easy access to restroom facilities."  (Tr. 26.)   In his discussion
of the evidence, the ALJ found Plaintiff's subjective symptom
testimony was not credible to the extent the alleged limitations
were inconsistent with the RFC findings.  (Tr. 26-27.)   Based on
Plaintiff's work record, the RFC, and VE testimony, the ALJ
concluded Plaintiff had no past relevant work as defined by the
Social Security regulations (Regulations).  (Tr. 29.)   At step five,
ALJ Duncan concluded there were jobs in the national economy
Plaintiff could perform, such as cleaner, agricultural sorter,
sewing machine operator, and production assembler.  (Tr. 30.)  Based
on these findings, the ALJ determined Plaintiff has not been under
a disability as defined by the Social Security Act from March 31,
2005, through the date of the decision.  (Tr. 31.)

**ISSUES**

The primary issue is whether the matter should be remanded to
the Commissioner for additional proceedings or for an immediate
award of benefits. (ECF No. 30, 32.)

**DISCUSSION**

Defendant concedes the ALJ erred: (1) in his evaluation of
medical evidence from cardiologist Romeo Pavlic, M.D., treating

physician Dr. Jon Mundall, and testifying medical expert Dr. David Rullman; 2) in his the evaluation of other source opinions from physical therapist Kimberly Cole; and (3) at step two when he determined chronic fatigue syndrome (CFS) is not a severe impairment. (ECF No. 30 at 5-6.) However, the Commissioner argues remand for additional proceedings is appropriate. Plaintiff replies that, in addition to the errors conceded by Defendant, the ALJ improperly rejected opinions of treating specialist Raphael Stricker. Citing *Strauss v. Commissioner of Social Security Administration*, 635 F.3d 1135, 1138 (9th Cir. 2011), and *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004), Plaintiff asserts the improperly rejected medical opinions and his subjective testimony should be credited-as-true, and once credited, it is clear from the record that he is disabled; therefore, remand for additional proceedings would serve no useful purpose and would further delay benefits to which he is entitled. (ECF No. 32 at 3-4.)

**A.   Credit-as-True Rule**

There are two remedies where the ALJ fails to provide adequate reasons for rejecting the opinion of treating or examining physicians. The general rule, found in the *Lester* line of cases, is that "we credit that [medical] opinion as a matter of law." *Benecke*, 379 F.3d at 593; *Lester v. Chater,* 81 F.3d 821, 834 (9th Cir. 1995); *Smolen v. Chater,* 80 F.3d 1273, 1291-92 (9th Cir. 1996); *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990); *Hammock v. Bowen*, 879 F.2d 498, 502 (9th Cir. 1989). Under the alternate approach found in *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989), a court may remand to allow the ALJ to provide the requisite

"specific" and "legitimate" reasons for disregarding the medical opinion. *See also Salvador v. Sullivan*, 917 F.2d 13, 15 (9th Cir. 1990) (*citing McAllister*). The *McAllister* approach appears to be disfavored where the ALJ fails to provide any reasons for discrediting a treating physician opinion. *See Pitzer*, *supra,* at 509; *Winans v. Bowen*, 853 F.2d 643 (9th Cir. 1988).

Where an ALJ to fails to provide specific, "clear and convincing" reasons for rejecting a claimant's testimony regarding his or her symptoms and limitations, the testimony also is credited as a matter of law. *Lester*, 81 F.3d at 834 (*quoting Varney v. Secretary of Health and Human Servs.*, 859 F.2d 1396, 1401 (9th Cir. 1988)(*Varney II*). The court is not to remand solely for new credibility findings. *Id.* When evidence credited as a matter of law establishes disability, the court will remand for payment of benefits. *Id.*

Defendant asserts the credit-as-true rule "runs afoul of the governing statute and should not be applied in any circumstances." (ECF No. 30 at 11.) He argues remand for additional proceedings is the appropriate remedy. (*Id.* at 9-11.) This argument was presented by the Commissioner in his petition for rehearing en banc in *Vasquez v. Astrue*, 572 F.3d 586, 589 (9th Cir. 2009)(amended dissent). As noted by dissenting Judge O'Scannlain, "because the crediting-as-true rule is part of our circuit's law, only an en banc court can change it." *Id.* The Commissioner's petition for rehearing en banc in *Vasquez* was denied and the rule remains unchanged. *Id.* Further, the Social Security Act clearly authorizes the reviewing court to affirm, modify or reverse the Commissioner's decision, "with or

without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Therefore, this court applies the credit-as-true rule as adopted by the Ninth Circuit in *Varney II*, (crediting improperly rejected pain testimony), and *Hammock* (crediting improperly rejected medical opinion and claimant testimony as true). *See also Lester*, 81 F.3d at 830-34 (crediting improperly rejected medical opinions and claimant testimony as true and remanding for immediate award of benefits); *Reddick v. Chater*, 157 F.3d 715 (9th Cir. 1998)(treating physician's improperly rejected opinion credited and matter remanded for benefits).

**B.    Improperly Rejected Treating Physician Opinions**

In evaluating a disability claim, the adjudicator must consider all medical evidence provided.  A treating physician's opinion is given more weight than that of an examining physician and a non-examining physician.  *Benecke,* 379 F.3d at 592.  If the treating physician's opinions are not contradicted, they can be rejected by the decision-maker only with "clear and convincing" reasons. *Lester*, 81 F.3d at 830.  If contradicted, the ALJ may reject the opinion with specific, legitimate reasons that are supported by substantial evidence.  *See Flaten v. Secretary of Health and Human Serv.*, 44 F.3d 1453, 1463 (9th Cir. 1995).

As indicated in the Regulations, the opinion of a treating physician is favored over non-treating physicians.  20 C.F.R. §§ 404.1927, 416.927.  Even if a treating physician's opinion is not given "controlling weight," the ALJ must give specific and legitimate reasons for rejecting the treating doctor's opinions and observations regarding diagnoses and symptoms.  *Id.; SSR* 96-2p.  Further, an

examining physician's opinion is not substantial evidence to reject a well-supported treating physician's opinion unless the examining physician's conclusions are based independent findings. *Orn v. Astrue*, 495 F.3d 625, 631-32 (9th Cir. 2007).

**1.   Raphael Stricker, M.D., Treating Specialist[2]**

The record shows in May 2006, after unsuccessful attempts to identify and treat symptoms that began in China, Plaintiff began treatment with Raphael Stricker, M.D., a specialist in internal medicine, hematology and immunotherapy who practices in San Francisco, California.[3] (Tr. 392, 528.)  The record contains Dr. Stricker's clinic notes and laboratory results from 2006 to 2008, as well as a physical evaluation dated August 2008, and detailed medical source statements dated January 15, 2007, and November 21, 2007. (Tr. 360-79, 392-98, 524-42.)  As noted by the ALJ, Dr. Stricker diagnosed tick-borne infections, including Lyme disease, based on his

---

[2]   Under the Regulations, a medical specialist's opinion is given more weight than the opinion of a source who is not a specialist.  20 C.F.R. §§ 404.1527 (d)(5); 416.927(d)(5).  Further, if a treating source has "reasonable knowledge" of a claimant's impairment, his opinion is given more weight than that of a non-treating source.  20 C.F.R. §§ 404.1527(d)(2)(ii), 416.927 (d)(2)(ii)

[3]   Dr. Rullman, board certified physician in internal medicine and hematology, testified Dr. Stricker is a recognized, respected specialist in the area of tick-borne infectious diseases. (Tr. 58-60, 392.)

ORDER GRANTING PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT AND DENYING DEFENDANT'S
MOTION FOR REMAND FOR ADDITIONAL PROCEEDINGS - 10

interpretation of hematology studies and Plaintiff's symptoms. (Tr. 24.) Dr. Stricker also diagnosed chronic fatigue/fibromyalgia and noted symptoms of memory loss, cognitive dysfunction, lack of concentration, extreme fatigue, headaches, joint pain, stomach pain, and diarrhea. (Tr. 393.)

### a. Lyme Disease Diagnosis

In August 2007, after 15 months as treating physician, Dr. Stricker diagnosed neuroborreliosis and ehrlichiosis (tick related infections), arthropathy, and chronic fatigue/fibromyalgia. (Tr. 526.) He indicated neuroborreliosis, arthropathy, and chronic fatigue/fibromyalgia were severe and marked, and opined that these diseases in combination severely limited Plaintiff in his work-related activities. *Id*. In November 2007, he opined Plaintiff was severely limited in his work level and had been unable to sustain a 40 hour work week at a sedentary or light level since March 2004. (Tr. 533-34.)

At step two, the ALJ specifically rejected Dr. Stricker's diagnosis of Lyme disease in favor of the opinions of a non-examining agency physician and an examining physician who reviewed Dr. Stricker's test results. (Tr. 25.) The ALJ accorded Dr. Stricker's opinions little weight because "his opinions are not supported by the evidence of record as a whole." (Tr. 29.) This general finding is not legally sufficient to reject observations, findings, and conclusions of a treating specialist's opinion. 20 C.F.R. §§ 404.1527; *Orn*, 495 F.3d at 631-32 (*quoting SSR* 96-2p at 4).

For example, in rejecting the Lyme disease diagnosis, ALJ Duncan relied on conclusions of Dr. Timothy Maughan, an infectious disease

consultant who assessed Plaintiff on July 17, 2006, when he was hospitalized for acute diarrhea, abdominal pain, nausea, vomiting and fever "in the setting of chronic fatigue syndrome." (Tr. 24, 435, 438.) Dr. Maughan's report shows he reviewed test results from Dr. Stricker and concluded that he "strongly doubted" Plaintiff had Lyme disease. (Tr. 438.) Because his examining opinion regarding the Lyme disease diagnosis is not based on independent findings, it is not substantial evidence to reject Dr. Stricker's opinion. *Orn*, 495 F.3d at 633.

The ALJ also relied upon the opinions of examining consultant Robert Rose, M.D. in rejecting Dr. Stricker's opinions. (Tr. 25, 28.) Dr. Rose's examining opinions, however, are not substantial evidence to reject Dr. Stricker's opinions regarding his speciality. Dr. Rose is not a specialist in the area of infectious diseases. Further, in his first report, (January 23, 2009), he appears to accept the diagnosis of chronic Lyme disease as "corroborated by immunohistochemical titers." (Tr. 608.) However, in a March 2009 follow-up report requested by the ALJ, Dr. Rose reviewed the test results originally interpreted by Dr. Stricker in 2006, and concluded the objective medical evidence did not support Dr. Stricker's opinions. (Tr. 639.) The inconsistency in Dr. Rose's reports detracts from the reliability of his conclusions, which in any case, are not considered substantial evidence to reject a treating specialist's conclusions. Because Dr. Rose is an examining consultant, is not an infectious disease or hematology specialist and did not base his conclusions on independent testing, his contradictory conclusions were erroneously given more weight than Dr.

1  Stricker's opinions.  *Orn*, 495 F.3d at 631-32.  The ALJ erred in his

2  unsupported rejection of Dr. Stricker's Lyme disease diagnosis and

3  opinions.

4      **b.   Chronic Fatigue Syndrome Diagnosis**

5      Even assuming substantial evidence supports the ALJ's rejection

6  of Dr. Stricker's diagnosis of Lyme disease, the ALJ failed to give

7  clear and convincing reasons for rejecting Dr. Stricker's

8  uncontradicted diagnosis of chronic fatigue syndrome. (Tr. 25, 29.)

9  The ALJ erred in finding the only CFS diagnosis in the record is from

10 treating physician Dr. Stricker. (Tr. 25.) As noted by ALJ Duncan,

11 medical expert David Rullman testified Plaintiff's symptoms satisfied

12 the criteria of CFS, but did not meet a Listing. (Tr. 25, 70.) Of

13 course, a medically determinable impairment does not have to meet a

14 Listing to be either severe or disabling. 20 C.F.R. 404.1520,

15 416.920. The record shows that a diagnosis of CFS also is supported

16 by substantial evidence from other treating physicians (discussed

17 below), as well as the medical expert Dr. Rullman, and comports with

18 the Commissioner's CFS definition and guidelines for evaluating CFS.[4]

19 _____

20      [4]  In *SSR* 99-2p, the Commissioner specifically defines CFS as:

21      [A] systemic disorder consisting of a complex of symptoms
        that may vary in incidence, duration, and severity. It is
22      characterized in part by prolonged fatigue that lasts 6
        months or more and that results in substantial reduction
23      in previous levels of occupational, educational, social,
        or personal activities. . . . Under the CDC definition,
24      the hallmark of CFS is the presence of clinically
        evaluated, persistent or relapsing chronic fatigue that is
25      of new or definite onset (i.e., has not been lifelong),
        cannot be explained by another physical or mental
26      disorder, is not the result of ongoing exertion, is not
        substantially alleviated by rest, and results in
27      substantial reduction in previous levels of occupational,
        educational, social or personal activities.

28

The ALJ impermissibly rejected Dr. Stricker's conclusions regarding limitations caused by the diagnosed illnesses, finding "the possibility always exists that a doctor may express an opinion in an effort to assist a patient with whom he . . . sympathizes," (Tr. 29), is speculation without a basis and an impermissible reason to reject Dr. Stricker's treating specialist opinion. *Lester*, 81 F.3d at 832 (Commissioner may not assume physicians routinely lie to help patients gain disability benefits). The ALJ's reasons for rejecting Dr. Stricker's CFS diagnosis and his treating opinion that Plaintiff is severely limited by symptoms of his diseases are not supported by substantial evidence. Therefore, Dr. Stricker's opinions are credited as a matter-of-law. *Lester*, 81 F.3d at 831.

### 2. Roger Woodruff, M.D., Treating Physician

Records submitted by Plaintiff show Dr. Woodruff was treating Plaintiff as early as December 2004, through October 2010. (Tr. 356, 354-58, 380-83, 507-23.) Dr. Woodruff's records indicate Plaintiff was receiving treatment in June 2005 for symptoms of an undiagnosed disease with "Lyme disease like symptoms." (Tr. 355.) At that time Dr. Woodruff observed "ongoing fatigue," and ongoing efforts to obtain a diagnosis for the symptoms. (*Id.*) The record reflects treatment for this condition through 2008, with Dr. Woodruff noting persistent "severe fatigue and chronic pain," symptoms that were

---

SSR 99-2p (*Definition of CFS*). As the court found in *Reddick*, "The ALJ's failure to acknowledge [the Commissioner's] guidelines may be emblematic of the reluctance to acknowledge CFS that appears to underlie his decision." *Reddick*, 157 F.3d at 728.

ORDER GRANTING PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT AND DENYING DEFENDANT'S
MOTION FOR REMAND FOR ADDITIONAL PROCEEDINGS - 14

typical of Lyme disease.  (Tr. 354, 507, 518, 520.)  He also noted muscle tenderness, arthralgias, and myalgia.  It appears Dr. Woodruff worked with Dr. Stricker through 2007 to provide treatment for what was believed to be Lyme disease. (*See* Tr. 507.)  In addition, Dr. Woodruff consistently acknowledged a diagnosis of CFS and documented symptoms recognized by the CDC and the Commissioner in establishing the existence of a medically determinable impairment. (Tr. 347-56, 507, 519-20.)

Dr. Woodruff's clinic records and unrejected findings are consistent with CFS factors identified in SSR 99-2p, as well as Plaintiff's subjective complaints.  (*SSR* 99-2p.)  Because these findings by treating physician Woodruff are not specifically rejected with legally sufficient reasons, they are credited as a matter of law.

### 3.   Jon R. Mundall, M.D., Treating Physician

The record shows Dr. Mundall treated Plaintiff from 1998 to 2007. (Tr. 338-40, 453-74.)  In March 2004, he reported Plaintiff suffered from chronic fatigue, diarrhea, sweats/flushes, aching all over, headaches, dizziness, and difficulty concentrating or studying. (Tr. 474.)  He diagnosed CFS, chronic gastroenteritis, headaches, polyneuritis, insomnia, and allergies.  (Tr. 338.)  In a June 2010 medical source statement submitted to the Appeals Council, Dr. Mundall specifically addressed Plaintiff's CFS diagnosis, stating Plaintiff "is experiencing many of the major determinants of this diagnosis, specifically chronic fatigue, pain at multiple sites, poor sleep, neck pain, sore throat and lack of positive lab tests." (Tr. 339.)  Dr. Mundall's observations are consistent with symptoms listed

ORDER GRANTING PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT AND DENYING DEFENDANT'S
MOTION FOR REMAND FOR ADDITIONAL PROCEEDINGS - 15

in *SSR* 99-2p.  Regarding the possibility of somatoform disorder, Dr. Mundall opined that Plaintiff's "particular symptom complex is more consistent with CFS." (*Id.*)  He noted Plaintiff's expressed "desire to be active is present, but the capacity to accomplish activities is lacking." (*Id.*)  These opinions are supported by clinic notes and observations recorded at the time of treatment, as well as reports from Dr. Stricker and Dr. Woodruff.[5] (Tr. 452-74.)

---

[5]  Dr. Rose's summary dismissal of Dr. Mundall's clinic notes and opinions, (Tr. 640), is unsupported by the record before this court.  As discussed in the body of this decision, Dr. Mundall's records evidence ongoing treatment and testing between 2003 and 2007.  (Tr. 453-74.)  Dr. Mundall's medical source statement dated June 9, 2010, and submitted to the Appeals Council indicates a treatment relationship since 1998.  (Tr. 2-8, 338.) In March 2004, Dr. Mundall prepared a letter summarizing Plaintiff's diagnoses, his symptoms, the length of his illness, and unsuccessful efforts to treat. (Tr. 474.)  His statement is supported by his treatment records and evidence from other treating sources.  The June 2010 medical source statement further explains Plaintiff's diagnoses, treatment history, and prognosis during the relevant period; this evidence is consistent with the March 2004 opinion. (Tr. 338-40.) The supplemental medical source statement (which was not available to Dr. Rose at the time of his report) was reviewed by the Appeals Council and is, therefore, part of the record on review.  (Tr. 4-5, 11-12.)  *Ramirez v. Shalala*, 8 F.3d 1449, 1452 (9th Cir. 1993); *Gomez v. Chater*, 74 F.3d 967, 971 (9th Cir. 1996).

As conceded by the Defendant, the ALJ failed to properly evaluate evidence from Dr. Mundall.   Further, the ALJ did not give specific and legitimate reasons for giving little weight to Dr. Mundall's March 2004 opinion that "claimant will likely remain in a disabled condition indefinitely." (Tr. 29, 474.)   As a treating physician whose opinions are consistent with other treating opinions in the record and supported by his own treatment notes and medical source statement, Dr. Mundall's unrejected opinions are credited as true and given significant weight. 20 C.F.R. §§ 404.1527; *Lester*, 81 F.3d at 831, 834; *Reddick*, 157 F.3d at 728.

### 4.   Graeme French, M.D. Orthopedic Surgeon

It is noted on review that after the hearing before ALJ Duncan, but before the Commissioner's decision was rendered, Plaintiff submitted evidence from treating orthopedic surgeon Graeme French, dated September 2008 and December 2008. (Tr. 626-38.)   It appears the ALJ reviewed these records, which predate the report from March and January 2009 reports from examining physicians Drs. Rose and Severinghaus that are discussed in the Decision. (*See* Tr. 28, 618-25, 639-40.)   Based on his treating relationship, Dr. French opined that Plaintiff was severely limited by his right and left shoulder instability and pain, combined with his infectious disease, which would intensify the effects of pain. (Tr. 633, 636, 638.)   The ALJ did not address or reject this treating physician's opinion's in his decision.   Dr. French's treating opinions are consistent with those of Drs. Stricker, Mullan, and Woodruff regarding the severity of Plaintiff's impairments.   Therefore, they deserve significant weight and are credited accordingly. *Orn*, 495 F.3d at 633; 20 C.F.R. §§

1   404.1527 (d)(2)(i), 416.927(d)(2)(i); *SSR* 96-2p.

2       Plaintiff has presented substantial evidence from treating
3   physicians that he has the medically determinable impairment of CFS
4   that, combined with his shoulder condition, severely limits him in
5   his ability to work on a sustained basis.  Medical sources opinions
6   from treating physicians Stricker, Mundall, and Woodruff were
7   disregarded *in toto*, or rejected with legally insufficient reasons.
8   Consistent with this Circuit's precedent, these improperly rejected
9   treating opinions are credited as true.

10  **C.   Credibility Determination**

11      Plaintiff argues the ALJ gave impermissible reasons for
12  completely rejecting his complaints of fatigue, pain, and non-
13  exertional limitations.  (ECF No. 20 at 17-19.)  Although the
14  Commissioner does not concede specifically that the existing
15  credibility findings are erroneous, he states that re-evaluation of
16  Plaintiff's credibility would be necessary on remand.  (ECF No. 30
17  at 5.)

18      The Commissioner's credibility determination must be supported
19  by findings sufficiently specific to permit the court to conclude the
20  ALJ did not arbitrarily discredit claimant's testimony.  *Bunnell v.*
21  *Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991) (en banc).  If there
22  is no affirmative evidence that the claimant is malingering, the ALJ
23  must provide "clear and convincing" reasons for rejecting the
24  claimant's testimony regarding the severity of symptoms.  *Reddick*,
25  157 F.3d at 722.  The ALJ "must specifically identify the testimony
26  she or he finds not to be credible and must explain what evidence
27  undermines the testimony."  *Holohan v. Massanari*, 246 F.3d 1195, 1208

28

1 (9th Cir. 2001)(citation omitted).

2    The ALJ found Plaintiff's allegations were not credible based
3 on his observation that Plaintiff was "sitting comfortably" during
4 the hearing.  (Tr. 28.)  This is improper "sit and squirm"
5 jurisprudence that has been expressly prohibited by the court.  To
6 the extent credibility findings reflect an ALJ's personal observation
7 of Plaintiff during the hearing, those findings are error.  *Gallant*
8 *v. Heckler*, 753 F.2d 1450, 1455 (9th Cir. 1984); *Perminter v. Heckler*,
9 765 F.2d 870, 872 (9th Cir. 1985).  Other reasons cited by the ALJ are
10 not sufficient to meet the rigorous standard required to reject a
11 claimant's subjective testimony. *Lingenfelter v. Astrue*, 504 F.3d
12 1028, 1035-36 (9th Cir. 2007); *Smolen*, 80 F.3d at 1281.

13    For example, the ALJ found Plaintiff's complaints were
14 inconsistent with the evidence of record, referencing specifically
15 the disputed Lyme disease diagnosis and Plaintiff's report of daily
16 activities over the years.  (Tr. 27-28.)  This reasoning is neither
17 "clear" nor "convincing." *Vertigan v. Halter*, 260 F.3d 1044, 1050
18 (9th Cir. 2001); *Morgan*, 169 F.3d at 599.  The fact that Plaintiff
19 relied on his treating specialist's diagnosis of Lyme disease when
20 reporting his past medical history  does not render his subjective
21 complaints unreliable.  It is clear from the record that this disease
22 is difficult to diagnose.  Indeed, there are varying opinions among
23 the medical sources in the record regarding the reliability of
24 diagnostic tools and the interpretation of results.  Further, as
25 discussed above, Dr. Stricker's diagnosis was not contradicted by
26 independent findings from a treating specialist.

27    Regarding Plaintiff's daily activities, Plaintiff candidly

28
ORDER GRANTING PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT AND DENYING DEFENDANT'S
MOTION FOR REMAND FOR ADDITIONAL PROCEEDINGS - 19

reported activities at the hearing, but also reported he could not sustain constant activity, and spurts of activity left him bed-ridden for days and weeks. (Tr. 47, 54, 74, 88-89.) The ALJ's finding that Plaintiff's statements at the 2008 hearing were inconsistent with his 2006 written report (Tr. 28) does not reflect a lack of credibility where, as here, the diagnosed impairment of CFS is characterized by "a complex of symptoms that may vary in incidence, duration and severity." *SSR* 99-2p. Indeed, Plaintiff's testimony regarding the waxing and waning of symptoms is entirely consistent with the symptoms of CFS. *See Reddick,* 157 F.3d at 722 (reported periods of sporadic activity and exacerbation of symptoms consistent with CFS diagnosis); *Lester*, 81 F.3d at 833 (sporadic ability to work and occasional symptom-free periods are not inconsistent with disability). Further, Plaintiff's description of his efforts to travel as he had in the past, routine activities of shopping, eating out with his parents, spending time with his girlfriend, and occasionally driving is not substantial evidence to support the ALJ's credibility determination. *Reddick,* 157 F.3rd at 722 (claimant's attempt to live a normal life is not a basis for an adverse credibility finding); *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987) (claimant need not "vegetate in a dark room" to be found disabled); *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)(evidence of home activities not easily transferable to the "grueling environment" of the workplace does not support adverse credibility finding).

    In *Lester,* the court held where the ALJ failed to give "clear and convincing" reasons for rejecting claimant's testimony, the

credit-as-true rule is mandatory only where "the claimant would be disabled if his testimony were credited." *Lester*, 81 F.3d at 834. Here, the improperly rejected treating opinions discussed above establish CFS as a medically determinable impairment that severely limits Plaintiff's ability to sustain work.   In addition, the ALJ found Plaintiff would require "direct, easy access to restroom facilities" due to the side effects of his medication.  (Tr. 26.) The VE testified that if Plaintiff's testimony were credited, combined with the restroom requirement and the credited limitations reported by Dr. Stricker, Plaintiff would be unemployable.  (Tr. 96-100).   Therefore, under *Lester*, for the reasons discussed above, Plaintiff's testimony is credited as true.

**D.   Remedy**

As found recently by the Ninth Circuit, "When an ALJ's reasons for rejecting the claimant's testimony are legally insufficient and it is clear from the record that the ALJ would be required to determine the claimant disabled if he had credited the claimant's testimony, we remand for calculation of benefits." *Orn*, 495 F.3d at 639.  *See also McCartey v. Massanari*, 298 F.3d 1072, 1077 (9th Cir. 2002);   *Lester*, 81 F.3d at 834 (crediting erroneously rejected medical opinions and claimant testimony and remanding for benefits); *Swenson v. Sullivan,* 876 F.2d 683, 689 (9th Cir. 1989) (crediting claimant testimony and awarding benefits).   While the Ninth Circuit has ruled that the district court has the discretion to remand for an award of benefits, *Smolen*, 80 F.3d at 1292, it appears the case law requires an immediate award of benefits when:   (1) the ALJ has failed to provide legally sufficient reasons for rejecting the

evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. *Benecke*, 379 F.3d at 593; *Harman*, 211 F.3d at 1178; *Reddick,* 157 F.3d at 728. The court will not remand solely for new credibility findings. *Varney II,* 859 F.2d at 1401.

As discussed above, once improperly rejected treating physician opinions are credited, medical evidence establishes the medically determinable impairment of CFS, the symptoms of which have persisted and severely limited Plaintiff's ability to sustain work since the amended onset date. New evidence reviewed by the court is consistent with credited treating physicians' opinions and does not give rise to a conflict in the medical evidence that requires resolution by the ALJ. Vocational expert testimony establishes that if Plaintiff's testimony is credited, his limitations would preclude employment. (Tr. 97-98.) Thus, crediting Plaintiff's testimony and improperly rejected treating physician evidence, it is clear from the record Plaintiff has been disabled from the alleged onset date. Because remand for additional proceedings would serve no useful purpose, the matter is remanded for a calculation and immediate award of benefits. Accordingly,

**IT IS ORDERED:**

1.    Plaintiff's Motion for Summary Judgment **(ECF No. 18)** is **GRANTED** and the matter is remanded to the Commissioner for calculation and an immediate award of benefits.

2.    Defendant's Motion for Remand **(ECF No. 29)** is **DENIED;**

ORDER GRANTING PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT AND DENYING DEFENDANT'S
MOTION FOR REMAND FOR ADDITIONAL PROCEEDINGS - 22

1       3.   Application for attorney fees may be filed by separate

2  motion.

3       The District Court Executive is directed to file this Order and

4  provide a copy to counsel for Plaintiff and Defendant. Judgment shall

5  be entered for Plaintiff, and the file shall be **CLOSED**.

6       DATED April 5, 2012.

7

8                   S/ CYNTHIA IMBROGNO
                UNITED STATES MAGISTRATE JUDGE
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORDER GRANTING PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT AND DENYING DEFENDANT'S
MOTION FOR REMAND FOR ADDITIONAL PROCEEDINGS - 23